## STATE OF FLORIDA v WATERS

Arrest No. BS 876919 (Unfiled)

County Court, Broward County

May 15, 1987

### APPEARANCES OF COUNSEL

**Kevin Raudt,** Assistant State Attorney, for plaintiff.

### OPINION OF THE COURT

WILLIAM W. HERRING, County Judge.

"DUI Bicycle"; it sounds like the name of a movie (in a genré similar to "D.C. Cab" or "Murder by Death", perhaps) or maybe a new heavy metal rock group with a music video on MTV. Does the phrase have a dramatic, resonant legal quality? Hardly. Yet that purportedly criminal charge confronted the undersigned judge in magistrate first-appearance hearings on May 4th. The Court dismissed the charge, determining that the gray, Huffy bicycle, ridden by the Defendant Waters in the early morning hours that day, was and is not a "vehicle" within the legal contemplation of the DUI statute, as a matter of law.

The Court, on the basis of further semi-scholarly and expeditious research and analysis, grasps the error of its ways and VACATES

**49**

AND SETS ASIDE its prior ORDER of DISMISSAL of the DUI CHARGE, never rendered into writing, and which could not have prevented the State from filing a formal charge of DUI against Waters, under the *Gerstein v. Pugh* decision and Rule 3.131, *Fla.R.Civ.P.*, founding its determination on the apparent legislative history and intent. (The Court thus challenges the legislature with a "Say it ain't so, Joe" entreaty, much as the street urchin of Chicago implored Shoeless Joe Jackson to deny any involvement in the 1919 "Black" Sox World Series scandal.)

Prior to 1983, it was clear that, with the exception of certain bicycle regulations previously found in Section 316.111, Florida Statutes, and later transferred to and expanded in Section 316.2065, Florida Statutes, the provisions of Chapter 316, Florida Statutes, generally dealing with moving and nonmoving non-criminal infractions and criminal traffic offenses did not apply to bicycles, as they were expressly excepted from the definition of a "vehicle", under Section 316.003(64), Florida Statutes. See *Eicholz v. Frey*, 173 So.2d 771 (2d DCA Fla. 1965). However, in that year and pursuant to Chapter 83-68, Laws of Florida, the language in the above subsection which excepted both bicycles and mopeds was deleted. That the evident intent of the legislature was to subject bicyclists to all of Chapter 316's proscriptions relative to both noncriminal infractions and criminal traffic offenses (misdemeanors) is further demonstrated by the changed language of Section 316.2065(1), Florida Statutes, which provides:

> "(1) Every person propelling a vehicle by human power has all of the rights and all of the duties applicable to the driver of any other vehicle under this chapter, except as to special regulations in this chapter, *and except as to provisions of this chapter which by their nature can have no application.*"

(The above-emphasized proviso will be discussed below.)

See *Attorney General Opinion* 84-10 at pp. 21-23, written January 26, 1984, which makes the above conclusion as to noncriminal infractions and by implication the same conclusion as to criminal traffic offenses (the inquiry was limited to infractions).

The Court was concerned about skateboards, roller skates, soapbox derbies and the like. They, like a bicycle, are not motor-propelled but move only through the exertion of human labor. Could they be subject to the provisions of Section 316.193, Florida Statutes, and the other provisions of the Chapter which deal with criminal traffic offenses; see Section 318.17, Florida Statutes. Section 316.2065 makes it clear that such devices are not "vehicles" but are subject to the statutory regulations governing pedestrians. Subsections (10) and (12) state:

"(10) A person propelling a vehicle by human power upon and along a sidewalk, or across a roadway upon and along a crosswalk, has all the rights and duties applicable to a pedestrian under the same circumstances.

. . . . . . . . . . .

"(12) No person upon roller skates, or riding in or by means of any coaster, toy vehicle, or similar device, may go upon any roadway except while crossing a street on a crosswalk; and, when so crossing, such person shall be granted all rights and shall be subject to all of the duties applicable to pedestrians."

Similarly, nearly all of the charging statutes for the criminal traffic offenses other than DUI employ the more comprehensive legal term, "vehicle", not "motor vehicle", with few exceptions indicated by the surrounding context. See Section 316.027, dealing with leaving the scene of an accident involving death or personal injuries (subsection (3) requires revocation of driver's license on conviction, for an unstated period of time—presumably permanent?); Section 316.061, treating with leaving the scene of an accident involving property damage; Section 316.067, involving the making of false accident reports (does not expressly refer to a vehicle or motor vehicle); Section 316.072(3), involving the failure or refusal to comply with officer's lawful order (no reference to vehicle or motor vehicle); Section 316.192, treating with reckless driving; Section 316.1935, dealing with fleeing or attempting to elude an officer (subsection (2) provides on conviction for the revocation of one's license for a period up to one year, if a motor vehicle was being operated); but Section 316.545(1), dealing with the obstruction of a weight and safety officer who orders the "vehicle" weighed, makes clear by its context that a commercial motor vehicle, only, is governed by its provisions.

Recent material changes in the DUI law itself further compel the conclusion that a bicycle is a "vehicle" governed by the law's directives, except for one apparent and material exception, discussed below. Prior to the substantial amendments to the DUI law wrought by Chapter 86-296, Section 1, *Laws of Florida*, there was an unambiguous, substantive distinction between "driving while intoxicated" on the one hand, as prohibited by Section 316.193; and "driving while intoxicated", "driving while intoxicated with damage to property or person of another", "driving while intoxicated with serious bodily injury to another", and "manslaughter—driving while intoxicated", as proscribed by subsections (1), (2)(a), (2)(b) and (2)(c), respectively of Section 316.1931; relative to the kind of conveyance one had to have

**51**

operated to be covered by the statute's provisions. The former utilized the term "vehicle", throughout, but the latter, as to "driving while intoxicated" not inclusive of manslaughter employed the phrase, "any automobile, truck, motorcycle, or other vehicles", but with "DWI—manslaughter" used the term, "motor vehicle". As to the different types of driving while intoxicated, one could not be prosecuted for operating a bicycle. See *State v. Guidry*, 467 So.2d 156 (3d Cir. Ct. App. La. 1985) (under driving while intoxicated statute, bicycle was not an "other means of conveyance", the term or phrase being limited to motorized vehicles, where the operative language was "any motor vehicle, aircraft, watercraft, vessel or other means of conveyance"—there was a dissenting opinion). The reasoning of the Louisiana court would have even stronger force here, as the DWI non-manslaughter terminology enumerates three kinds of motorized vehicles and then the generally inclusive language "or other vehicle", meaning vehicles similar in nature and kind to the three types specified, which are by their nature motorized vehicles. However, Chapter 86-296, Section 1, did away with the distinction as well as the offense of driving while intoxicated, everywhere employing the legal term "vehicle". Now, if a bicyclist should be fortunate enough to survive an accident while DUI, if someone dies, he or she (the bicyclist) may be prosecuted for DUI—manslaughter. Is this what the legislature intended, with a means of conveyance which may be operated in a dangerous manner, but has never been declared by a court of this State to be a dangerous instrumentality? Apparently so. . . .

Although D6, indefinite suspensions of drivers' licenses for failures to appear, pay fines or attend traffic school, are now being imposed on bicyclists on the strength of the 1983 statutory amendments, and a DUI bicyclist may lose his or her license for the requisite time periods depending on the number of prior convictions, on the event of the present conviction, see Section 322.28, Florida Statutes, there is one material, highly significant portion of Chapter 316 "which by (its) nature can have no application". One is not required to possess a valid driver's license to operate a bicycle in Florida (nor any other state, as far as the Court knows). That being so, the "implied consent" provisions of Section 316.1932 would have no applicability as to an alleged DUI bicyclist, nor would the corresponding statutory scheme of driver's license suspension on refusal to submit to a breath and/or urine test, under Section 322.261. The State will have to rely on voluntary consents to be tested, with no attendant sanctions for refusal to accommodate the investigating officer. Without breath or urine test results, the State's cases against DUI bicyclists will be substantially

weaker than those involving operators of motor vehicles and mopeds (one must have a driver's license to operate the latter), as to whom results are obtained on the strength of the license-suspension sanction. Perhaps the legislature might further amend the pertinent statutory provisions, to require bicyclists to obtain driver's licenses to operate lawfully on the road? (The Court's initial R.O.R. release of Defendant Waters is reinstated, pending further action or not by the State.)

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 15th day of May, 1987.